**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GRAYSON N., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 25 C 11929 |
| | ) | |
| | ) | Magistrate Judge M. David Weisman |
| FRANK BISIGNANO, Social Security | ) | |
| Commissioner, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Grayson N. appeals the Commissioner's decision finding him not disabled. For the reasons set forth below, Plaintiff's motion for summary judgment [18] is denied, and Defendant's motion for summary judgment [21][1] is granted. The Commissioner's decision is affirmed. Civil case terminated.

**Background**

Plaintiff filed his application for Supplemental Security Income (SSI) on March 24, 2022, followed by his application for Disability Insurance Benefits (DIB) on May 10, 2022. (R. 120; 130.) In both applications, he alleged disability beginning February 16, 2022, which he later amended to July 1, 2023. (R. 346.) His applications were denied at the initial and reconsideration levels. (R 120; 130; 131; 142.) A hearing was held on August 22, 2024, followed by a supplemental hearing on September 17, 2024, both before Administrative Law Judge (ALJ) Deborah J. Van Vleck. On October 18, 2024, the ALJ issued an unfavorable decision. (R. 32-54.) Plaintiff then requested Appeals Council review of the ALJ's decision, which was denied on July 29, 2025, making the ALJ's decision final. (R. 1-6.) Plaintiff then filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

**Analysis**

A claimant is disabled within the meaning of the Social Security Act if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). The relevant regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the

[1] Although Defendant did not separately file a motion for summary judgment, the Court construes Defendant's memorandum in support of summary judgment [21] as including a motion.

claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

"ALJs are 'subject to only the most minimal of articulation requirements'— an obligation that extends no further than grounding a decision in substantial evidence." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) (quoting *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024)). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

The ALJ found Plaintiff suffered from severe residual effects of a cerebrovascular accident (stroke) on February 16, 2022, including aphasia, epilepsy, and a mild neurocognitive disorder, as well as obesity, diabetes mellitus, hyperlipidemia, and hypertension. (R. 38.) She found Plaintiff had the RFC to lift and carry 20 pounds occasionally and ten pounds frequently, stand and/or walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday. (R. 42.) She found Plaintiff could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds, or work in the presence of unprotected heights or hazardous machinery. (R. 42.) She further found Plaintiff could not be expected to operate a motor vehicle as part of his job duties. (R. 42.) Additionally, the ALJ limited Plaintiff to simple, routine, repetitive tasks, not at production rate pace (e.g., assembly line work), found Plaintiff could use judgment to deal with changes consistent with such work, and that Plaintiff could have no more than occasional interaction with the public and coworkers. (AR 42.) The ALJ found Plaintiff could not perform any of his past relevant work. (R. 47.) However, she found Plaintiff could perform other work, including work as a marker, router, and a housekeeping cleaner. (R. 48.). Therefore, the ALJ found Plaintiff not disabled.

Plaintiff first asserts that the ALJ's RFC assessment was not supported by substantial evidence because the ALJ failed to explain how the evidence led to her conclusions, as required by 20 C.F.R. §§ 404.1545 and 416.945 and SSR 96-8p and failed to include limits by consulting doctors whose opinions the ALJ purported to have found persuasive. The ALJ found that Plaintiff had a severe impairment of "mild neurocognitive disorder" and had a moderate limitation in the broad functional category of concentration, persistence, and pace. (R. 38, 41.) While the ALJ acknowledged Plaintiff's complaints with concentration, completing tasks, and paying attention, the ALJ also noted that Plaintiff was able to prepare simple meals, shop for household essentials, manage his personal finances and that, moreover, "mental status examinations performed by his neurologist have consistently reflected benign signs including normal orientation, intact memory, and normal concentration/attention." (R. 41) (citing Ex. 4E/2-4, 10F/28, 34, 40, and 46). As already noted, the ALJ ultimately found Plaintiff had an RFC that allowed him "to perform simple, routine and repetitive tasks but not at a production rate pace (e.g., assembly line work)" and "use

judgement and deal with changes consistent with this type of work." (R. 42), while acknowledging "evidence of residual cognitive difficulties." (R. 43.)

According to Plaintiff, while the ALJ found Plaintiff's conditions caused moderate limitations maintaining concentration, persistence, or pace, she was required to indicate what, specifically, caused Plaintiff's deficits in those areas and tailor the RFC assessment to account for those specific limitations. Plaintiff asserts that the ALJ's decision included no logical bridge from Plaintiff's specific deficits in concentration, persistence, or pace to the ALJ's conclusion that Plaintiff could maintain work with the assessed limits in the ALJ's RFC assessment. Plaintiff contends that the ALJ's decision lacked any analysis and that the ALJ did not explain what symptoms, situations, or circumstances caused the deficits that she acknowledged and did not indicate if Plaintiff's moderate restrictions in the overall category of concentration, persistence, or pace meant Plaintiff had limitations in all of those areas, only one, or two of those areas.

But the ALJ did connect the medical evidence to Plaintiff's RFC (and provided for a more limited RFC than the consultants envisioned). For example, the ALJ, in disagreement with the psychological consultants, stated that

> [a]lthough these consultants supported the outlined limitations by referencing medical evidence available at these prior stages, the updated record reflects that the claimant would have additional limitations. Of note, I have further limited the claimant to simple, routine, and repetitive tasks but not at a production rate pace (e.g., assembly line work). This degree of limitation is consistent with recent neurological treatment notes, which have reflected ongoing cognitive complaints and indications of mild aphasia on physical examinations (Exhibit 10F/10, 14). More importantly, this degree of limitation better acknowledges the claimant's allegations regarding difficulties remembering, completing tasks, concentrating, understanding, and following instructions (Exhibit 4E/6).

(R. 13-1, at 45-46.) In addition, the ALJ noted as follows:

> After an internal medicine consultative examination on January 18, 2023, Christian Tibbs, MD, opined that the claimant is able to stand and walk unassisted and is able to perform fine and gross manipulation without limitations (Exhibit 5F/5). Furthermore, the claimant exhibited no limitation concerning his hearing or vision and he could walk up to fifty feet unassisted (*Id.*). This opinion is persuasive because it is supported by the signs and symptoms documented within the accompanying consultative report. Of note, a physical examination performed by Dr. Tibbs reflected evidence of good range of motion, excellent strength in all four extremities, and normal sensations (*Id.* at 3-5). Likewise, these limitations are consistent with evidence contained within the claimant's treatment notes, which reflect that the claimant has generally exhibited

> benign signs including normal dermatological appearance, normal range of motion, normal gait, intact strength, intact reflexes, and normal sensations on recent physical examinations (Exhibits 9F/8 and 10F/46).
>
> . . .
>
> Given the above medical evidence, I have limited the claimant to a reduced range of light work with seizure precaution limitations. Further, given evidence of ongoing mild aphasia and neurocognitive deficits, the above residual functional capacity restricts the claimant to simple, routine, and repetitive tasks in a work environment characterized by limited social interactions.

(*Id.* at 46.)

As noted by Defendant, the Seventh Circuit has upheld similar RFC findings with moderate limitations in concentration, persistence, and pace. (Def.'s Mot. Summ. J., Dkt. # 21, at 6) (citing *Cain v. Bisignano*, 148 F.4th 490, 495, 498–99 (7th Cir. 2025) ("ALJ's RFC determination limiting Cain to performing simple, routine, and repetitive tasks is consistent with the moderate" checkbox limitations noted by state-agency psychologists in "(1) understanding and remembering detailed instructions, (2) carrying out detailed instructions, (3) maintaining attention and concentration for extended periods") (citation omitted); *Pufahl v. Bisignano*, 142 F.4th 446, 460 (7th Cir. 2025) (restrictions to "simple and routine tasks" with "further limitation" of "only being able to 'maintain attention and concentration for two-hour segments'" addressed plaintiff's "moderate limitations in concentration, persistence, or pace"); *Streikus v. O'Malley*, No. 22-2484, 2024 WL 983568, at *4 (7th Cir. Mar. 7, 2024) (affirming where appellant argued that "RFC limitation to 'simple routine tasks' is insufficient" to address "his issues with concentration, persistence, and pace"); *Hess v. O'Malley*, 92 F.4th 671, 678 (7th Cir. 2024) (holding that a residual functional capacity limiting a claimant to no "fast paced production quota[s]," such as assembly lines, accommodates moderate limitations in concentration, persistence and pace)).

Plaintiff asserts that the ALJ made no finding that Plaintiff's problems concentrating, persisting, or maintaining pace were based on the complexity of the task to support a limit to simple work. (Pl.'s Br., Dkt. # 18, at 4-5.) Plaintiff engages in a lengthy and detailed exposition of *all* the analysis in which the ALJ should have engaged, picking apart each and every conclusion and positing even that:

> *If* Plaintiff's hand movement with his right hand were slowed, that would suggest that he would work at a slower pace than the average worker. *If* Plaintiff worked slower, throughout the day, than the average worker, that would affect both Plaintiff's ability to perform production paced work, but also would impact his productivity, compared to the average worker, even when faced paced/production pace work, like assembly line work, was not involved. *If* Plaintiff could not meet the same daily production standards as the other

> workers, that could have a significant impact on Plaintiff's ability to maintain work.

(*Id.* at 6.) But Plaintiff is imposing on this Court a level of detailed review that is not appropriate under the law. This Court must conclude whether the ALJ's decision was grounded in substantial evidence, *Morales,* 103 F.4th at 471, and the Court finds it was. It is not this Court's role to substitute its judgment for that of the Commissioner.

Plaintiff further faults the ALJ for restricting Plaintiff's interactions with his coworkers but not his supervisors. (*Id.* at 7) (citing *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)). But in *Young*, the court specifically differentiated supervisors from co-workers because "there was *substantial* evidence within the record that Young has difficulty accepting instruction, [and] responding appropriately to criticism. . . ." *Id.* (emphasis added). No such substantial evidence exists here. Further, as noted above, the ALJ did *not* find persuasive the conclusions of psychologists who reviewed Plaintiff's records at the both the initial and reconsideration levels of his claim (though Plaintiff states in a footnote that the ALJ actually did find the consultant's conclusions persuasive, despite stating otherwise, R. 18, at 8 n.4) and imposed additional limitations than those suggested by the psychological consultants. (R. 13-1, at 45-6.) In any event, as Defendant notes, any error is harmless because the "result of the psychologists' RFC assessments was that plaintiff was not disabled." (Def.'s Mot. Summ. J., Dkt. # 21, at 8) (citing AR 118-119 (listing jobs plaintiff could do and "Not Disabled" finding); AR 128-29 (same); AR 140-41 (same); AR 151- 52 (same); *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) ("We . . . 'will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.' An error is harmless if, upon examination of the record, the court can 'predict with great confidence what the result of remand will be.'") (quoting *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021) (internal quotation marks omitted)). So even if the ALJ had found the psychological consultants' finding persuasive, the Court is convinced the ALJ would not have found Plaintiff disabled.

The Court concludes that the ALJs restriction limiting social interaction with co-workers and the public is appropriate on this record under the relevant standard of review. The Court finds that the ALJ met the minimal standard required for articulating the basis for her decision and creating the logical bridge between the medical evidence and the RFC.

Plaintiff next argues that the ALJ's evaluation of Plaintiff's subjective statements was not supported by substantial evidence and did not contain an evaluation of most of the relevant regulatory factors, as required by 20 C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p. The ALJ found Plaintiff's statements about his symptoms and limitations were not entirely consistent with the evidence. (R. 43) ("[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."). Plaintiff then homes in on the ALJ's statements that Plaintiff has received routine treatment for Type II diabetes mellitus, Plaintiff's hemoglobin A1C and blood glucose values on lab testing have trended in a positive direction, there are "few objective signs, outside of the elevated glucose and hemoglobin A1C readings, suggesting that the claimant has no notable functional limitations due to diabetes" (R. 44), and that the condition is effectively managed by medications. From there, Plaintiff asserts

that he did not "allege significant deficits due to diabetes or hyperlipidemia, and so, even if routine treatment for those conditions warranted discounting Plaintiff's reported limits related to those conditions, treatment for an impairment to which Plaintiff did not attribute work-preclusive limitations did not meaningfully inform about the consistency of Plaintiff's statements about symptoms that allegedly work-preclusive impairments produced." (Pl.'s Br., Dkt. # 18, at 9-10.) But Plaintiff's "argument" is misplaced. The ALJ was not specifically refuting any position by Plaintiff that he was suffering work-related restrictions because of his diabetes. Rather, the ALJ's reference to Plaintiff's diabetes was just one portion of the ALJ's overall review of the effects of all of Plaintiff's medical issues in order to substantiate her discounting Plaintiff's subjective statements. The ALJ discussed not only the status and treatment of Plaintiff's diabetes, but also Plaintiff's stroke and related seizures and aphasia, his hypertension, and his obesity. Plaintiff is simply manufacturing an issue that does not exist in the record, so this basis for reversal is denied.

In a similar vein, Plaintiff challenges the ALJ's position on Plaintiff's subjective statements by asserting that the ALJ "cited no evidence or opinion that additional treatment was available to Plaintiff that Plaintiff failed to undertake." (*Id.* at 9.) Again, however, this purported shortcoming in the ALJ's analysis is not availing because the ALJ was not faulting Plaintiff for purportedly neglecting to engage in treatment that was available to him. Rather, the ALJ was merely reviewing the current status of all Plaintiff's impairments.

Next, we turn to Plaintiff's contention that the ALJ's analysis of Plaintiff's subjective statements did not contain an evaluation of most of the relevant regulatory factors, as required by 20 C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p. According to Plaintiff, the ALJ only evaluated Plaintiff's treatment history. But as Defendant points out, the ALJ noted not only Plaintiff's treatment but also the effect of his medication, his daily activities, the intensity and the current status of his symptoms. (R. 41, 43, 44, 46) (noting the record shows "steady improvement in his symptoms"; that Plaintiff noted "no language problems"; that Plaintiff had "not exhibited significant deficits related to his stroke"; that while Plaintiff had experienced some probable seizure activity, Plaintiff indicated "that he had not experienced any recurrent seizure activity since increasing his dose during January 2024"; that Plaintiff's recent physical examinations showed Plaintiff "generally exhibited benign signs including normal dermatological appearance, normal range of motion, normal gait, intact strength, intact reflexes, and normal sensations"; and that Plaintiff was able "to prepare simple meals, shop for household essentials, and manage his personal finances"). These observations sufficiently cover the relevant regulatory factors, and any one suffices. *See Schrank v. Saul*, 843 F. App'x. 786, 789 (7th Cir. 2021) ("Even if the ALJ's other reason for discounting Schrank's testimony—that he was shopping around for doctors to support his disability application—was not substantiated by the record, we would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding.").

## Conclusion

For the reasons stated above, the Court affirms the Commissioner's decision.

**Date**: September 9, 2026

M. David Weisman

**M. David Weisman**
**United States Magistrate Judge**